# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CARPENTER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC.,<br><br>Defendant. | Case No. 17-cv-03221-JST<br><br>**ORDER GRANTING AMAZON'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 54, 55, 56, 62, 65, 66 |

Before the Court is Defendant Amazon.com, Inc. ("Amazon")'s Motion for Summary Judgment. ECF No. 54. For the reasons set forth below, the Court will grant the motion.

## I. BACKGROUND

### A. Factual Background

Defendant Amazon operates an online marketplace at www.Amazon.com. Plaintiffs David and Kim Carpenter ordered a hoverboard on Amazon's website in November 2015 as a Christmas gift for their daughter, Plaintiff C.C. ECF No. 1 ("Compl.") ¶¶ 29, 32. The item was sold and fulfilled by Paradise 00, a third-party seller based in China. ECF No. 62 at 9. On January 19, 2016, a few weeks after the hoverboard was shipped to Plaintiffs' home at 2130 East Foothill Drive in Santa Rosa, California, the house burned down in a fire Plaintiffs allege was caused by the hoverboard. *Id*. at 17. Plaintiffs were not home when the fire started, but their two family dogs were in the house and perished in the fire. Compl. ¶¶ 46, 48. The Carpenters, along with Plaintiff Kim Agrella, trustee of The Carpenter Family Trust, which owned the house, now seek to hold Amazon liable for the defective hoverboard under theories of strict products liability, negligence, breach of implied warranty, and fraudulent concealment. Compl. ¶¶ 5, 49-110.

On its website, Amazon both retails products from third parties and sells products itself. ECF No. 54 at 11. Where Amazon is the seller of a product, it sources the product, sets the price, holds the title, and is listed as the seller on the product detail page on its website. *Id.* Amazon requires third parties who wish to sell on its website to set up an account and accept the Amazon Services Business Solutions Agreement ("BSA"). *Id.* at 12. The BSA requires, among other things, that the seller "source, offer, sell and fulfill" its products itself. *Id.* The parties do not dispute that non-party Paradise 00 was the seller and fulfiller of the hoverboard the Carpenters purchased. ECF Nos. 54 at 10-11, 62 at 9 (Plaintiffs admit "the [hoverboard] was technically sold and fulfilled by Paradise 00").

Amazon's product safety team launched an investigation into hoverboards around November or December 2015 after a rash of news reports about hoverboards catching fire. ECF Nos. 54 at 13, 62 at 12-13. The investigation included communications with the Consumer Product Safety Commission ("CSPC"), an independent federal regulatory agency. ECF No. 62 at 12-13. Amazon's product safety team identified 17 reports of fire or smoke caused by hoverboards sold on Amazon.com. ECF No. 54 at 13. In mid-December 2015, Amazon decided to remove hoverboard offers from its website. *Id.* On December 12, 2015, Amazon emailed customers, including Kim Carpenter, stating in part that "[t]here have been recent news reports of safety issues involving products like the one you purchased that contain rechargeable lithium-ion batteries." ECF No. 62 at 15. The email contained a link to an Amazon website entitled "Lithium-Ion Battery Safety," as well as a link for customers wishing to return the product. *Id.* The email did not contain the information that Amazon had decided to remove hoverboards from its website, nor did the text of the email specify the risk of hoverboards catching fire or exploding. *Id.* at 15-16. Kim Carpenter testified that she never saw this email. ECF No. 54-2 at 29-30.

**B.      Procedural History**

Plaintiffs filed suit against Amazon on June 5, 2017, alleging (1) fraudulent concealment; (2) strict liability based on a manufacturing defect; (3) strict liability based on a design defect; (4) strict liability based on a failure to warn; (5) negligence; (6) breach of implied warranty; and (7) private nuisance. *See generally* Compl.

Plaintiffs' action was joined by Intervenor Plaintiff Allied Property and Casualty Insurance Company ("Allied"), which insured non-parties Calvin and Louise Carpenter – Plaintiff David Carpenter's parents and the beneficiaries of The Carpenter Family Trust – at the time of the accident. ECF No. 39-1 ¶¶ 4, 10-12. Allied compensated Calvin and Louise Carpenter for the losses caused by the fire, pursuant to their insurance policy, and seeks judgment against Amazon for the $407,713.56 it paid for the losses incurred, as well as prejudgment and post-judgment interest, attorneys' fees, and costs. ECF Nos. 39 at 2, 39-1 ¶¶ 19, 23, 43. State Farm General Insurance Company ("State Farm") filed its own suit against Amazon seeking reimbursement for the $177,887 it paid to its insured, Plaintiffs Kim and David Carpenter, and the Court related that action to this one. *See State Farm Gen. Ins. Co. v. Amazon.Com*, No. 17-cv-3221-JST, ECF Nos. 1-2, 7.

Amazon moved to dismiss Plaintiffs' private nuisance claim, ECF No. 11, and the Court granted the motion and dismissed the claim with prejudice, ECF No. 25. Amazon now moves for summary judgment on the remaining six claims. ECF No. 54. Amazon also seeks summary judgment on all claims brought by Allied, ECF No.55, and State Farm, ECF No. 56. The Carpenter Plaintiffs oppose the motion for summary judgment. ECF No. 62. Rather than separately oppose the motion, Intervenor Plaintiff Allied joins in the Carpenter Plaintiffs' opposition. ECF No. 65.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Where the party moving for summary judgment would bear the burden of proof at trial, that party "has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party "must either produce evidence negating an essential element of the

3

1 nonmoving party's claim or defense or show that the nonmoving party does not have enough
2 evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire &*
3 *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party satisfies
4 its initial burden of production, the nonmoving party must produce admissible evidence to show
5 that a genuine issue of material fact exists. *Id.* at 1102-03. If the nonmoving party fails to make
6 this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477
7 U.S. 317, 322-23 (1986).

**III. DISCUSSION**

Six claims remain in this action: (1) fraudulent concealment, (2) strict liability based on a manufacturing defect, (3) strict liability based on a design defect, (4) strict liability based on a failure to warn, (5) negligence, and (6) breach of implied warranty. Plaintiffs do not oppose Amazon's motion for summary judgment as to the implied warranty claim. ECF No. 62 at 18. Accordingly, the Court GRANTS summary judgment on Plaintiffs' sixth cause of action.

Amazon moves for summary judgment on the remaining claims, arguing that liability is precluded by California law, or, in the alternative, is independently barred by the federal Communications Decency Act ("CDA"). Because the Court agrees that Amazon may not be held liable under any of Plaintiffs' causes of action and is therefore entitled to judgment as a matter of law, the Court does not reach Amazon's arguments as to the CDA.

**A. Fraudulent Concealment**

Plaintiffs claim fraudulent concealment based on Amazon's failure to disclose the nature and existence of the hoverboard defect, as well as its affirmative misrepresentations about the product's safety. Compl. ¶¶ 50-57. Amazon argues that Plaintiffs' claim must fail because, among other things, Amazon had no duty to disclose the defect, and Kim Carpenter did not rely on any statements by Amazon in deciding to purchase the hoverboard. ECF No. 54 at 24-26.

The elements of a fraudulent concealment claim in California are: "(1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she

4

had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact." *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015) (citing *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606 (2014)). Fraudulent concealment is not actionable unless all the elements of fraud are present. *Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1168 (2005).

Beginning with the element of duty, fraudulent concealment exists "when a party to a transaction, who is under no duty to speak, nevertheless does speak and suppresses facts which materially qualify the facts stated." *Id.* at 1164-65 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)). Plaintiffs assert that Amazon a duty to speak on itself by sending an email on December 12th, 2015 to hoverboard customers that omitted material facts. ECF No. 62 at 29-30. Plaintiffs' theory of duty rests entirely on Amazon's December 12th email, *id.* at 28-31, and Plaintiffs appear to concede that Amazon did not owe a duty to them prior to that email. *Id.* at 29 ("*[E]ven if Amazon was under no duty to speak*, it nevertheless did speak on December 12, 2015, when it sent the 'non-alarmist' email to its hoverboard customers, including Kim Carpenter." (emphasis added)). Kim Carpenter purchased the hoverboard on November 9, 2015. ECF Nos. 54-2 at 21-22; 62 at 8. No fraudulent concealment could have occurred at the time of the hoverboard purchase because, even crediting Plaintiffs' theory of duty – that Amazon self-imposed a duty to disclose by sending its email – Amazon did not do so until nearly a month later.

"A misrepresentation or concealment does not amount to fraud unless and until there is reliance on it." *Persson*, 125 Cal. App. 4th at 1168; *see also Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1110 (1993) ("Reliance is an essential element of a fraud cause of action."). Here, there is no evidence Plaintiffs relied on Amazon's alleged concealment because Kim Carpenter did not see the December 12th email containing the alleged misrepresentations. ECF No. 54-2 at 29-30. Plaintiffs could not have acted in reliance on a misrepresentation they never read or received. *See OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 860 (2007) ("[I]nvestors who did not receive a document could not reasonably have relied on it." (citing *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1479 (1997))).

In the absence of any evidence of the Carpenters' reliance on Amazon's alleged

5

1  misrepresentations or concealments about hoverboard safety – an essential element of Plaintiffs'
2  fraudulent concealment claim – Plaintiffs have failed to raise a triable issue of material fact.
3  Amazon is entitled to summary judgment on this claim.

### B. Strict Liability

Pursuant to the doctrine of strict liability, "[a] manufacturer is strictly liable [to consumers] when an article [it] places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." *Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 62 (1963). The "*Greenman* [court] reasoned the doctrine would 'insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.'" *Bay Summit Cmty. Ass'n v. Shell Oil Co.*, 51 Cal. App. 4th 762, 772 (1996) (quoting *Greenman*, 59 Cal.2d at 63).

Strict products liability in California initially applied to manufacturers only, but courts soon extended the doctrine to retailers and others similarly involved in the vertical distribution of consumer goods. *See id.* at 772-73. Strict liability is applied to nonmanufacturing parties outside the vertical chain of distribution of a product when the party "play[s] an integral role in the 'producing and marketing enterprise' of a defective product and . . . profit[s] from placing the product into the stream of commerce." *Id.* at 773 (quoting *Kasel v. Remington Arms Co.*, 24 Cal. App. 3d 711, 724 (1972)). Extending liability to parties that do not themselves manufacture a product, but do participate in the chain of commerce, rests on policy justifications. *Id.* While such a party may not be involved in manufacture or design, it bears responsibility "for passing the product down the line to the consumer," and is thus "able to bear the cost of compensating for injuries." *Id.* (citing *Price v. Shell Oil Co.*, 2 Cal. 3d 245, 252 (1970)).

Not just any role in the chain of distribution is sufficient to trigger strict liability. *Hernandezcueva v. E.F. Brady Co.*, 243 Cal. App. 4th 249, 258 (2015) (citing *Arriaga v. CitiCapital Commercial Corp.*, 167 Cal. App. 4th 1527, 1535 (2008)). "To be subject to strict liability, a party must 'play more than a random and accidental role in the overall marketing enterprise of the product in question.'" *Id.* (quoting *Garcia v. Halsett*, 3 Cal. App. 3d 319, 326

6

(1970)). "[S]trict liability is not imposed even if the defendant is technically a 'link in the chain' in getting the product to the consumer market if the judicially perceived policy considerations are not satisfied." *Arriaga*, 167 Cal. App. 4th at 1537. Those policy considerations include enhancing product safety, maximizing protection to the injured plaintiff, and apportioning costs among defendants. *Id.* (citing *Vandermark v. Ford Motor Co.*, 61 Cal. 2d 256, 262-63 (1964)). Thus, the facts must establish a sufficient causative relationship between the defendant and the product to satisfy the policies underlying the strict liability doctrine. *Id.* at 1535 (citing *Bay Summit*, 51 Cal. App. 4th at 776).

*Bay Summit* set out a three-factor test for establishing this causal relationship under a marketing/distribution theory (what Defendants refer to as the "marketing enterprise doctrine"). *Id.* Plaintiffs argue the Court should impose strict liability against Amazon by applying this test. ECF No. 62 at 22-26. Under the marketing enterprise doctrine, a defendant outside the vertical chain of distribution will be held liable for a defective product if three factors are satisfied: "(1) the defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's conduct was a necessary factor in bringing the product to the initial consumer market; and (3) the defendant had control over, or a substantial ability to influence, the manufacturing or distribution process." *Bay Summit*, 51 Cal. App. 4th at 776.

Amazon asserts that Plaintiffs do not have enough evidence as to any of these elements to carry their ultimate burden of persuasion at trial. ECF No. 54 at 23-24. Plaintiffs respond that Amazon's activities in relation to the defective hoverboard satisfied all three elements. ECF No. 62 at 22-26. However, even assuming that Amazon did receive a direct financial benefit from the sale of the product, and that Amazon had a substantial ability to influence the manufacturing or distribution process, the Court concludes that Plaintiffs have failed to produce sufficient evidence to raise a genuine dispute of material fact on the second prong: whether the defendant's role was integral to the business enterprise and a necessary factor in bringing the product to market. As all three factors must be met to impose liability, Plaintiffs have not satisfied their burden of demonstrating a triable issue of fact as to all essential elements of the *Bay Summit* test. *See Nissan*

7

*Fire & Marine Ins. Co.*, 210 F.3d at 1102-03. Because Plaintiffs' strict liability causes of action depend on their ability to assert the marketing enterprise doctrine, the Court will grant Amazon summary judgment on all three of Plaintiffs' strict liability claims, including Plaintiffs' design defect, manufacturing defect, and failure to warn theories of liability.

The second factor of the marketing enterprise test asks whether Amazon's role was "integral to the business enterprise such that [Amazon's] conduct was a necessary factor in bringing the [hoverboard] to the initial consumer market." *Bay Summit*, 51 Cal. App. 4th at 776. In *Bay Summit*, this factor was met because Shell "played a dominant role in creating the market" for the defective plumbing product at issue in that case. *Id.* For example, "to achieve its goal of developing the [relevant] market as rapidly as possible," Shell provided "substantial marketing assistance" to manufacturers of systems involving the product, directly promoted the product to homebuilders and plumbers through newsletters, displayed the product at trade shows, and helped obtain model code approval for the product throughout the country. *Id.* at 769-70. Thus, the court found that a "properly instructed jury could reasonably infer the plumbing system would never have reached the consumer market without Shell's participation." *Id.* at 776.

Plaintiffs have not shown the same to be true for Amazon and hoverboards. Plaintiffs cite no specific evidence that Amazon's conduct was a "necessary factor" in bringing hoverboards to the initial consumer market. *Bay Summit*, 51 Cal. App. 4th at 776. Instead, Plaintiffs offer generally that "Amazon touts its online marketplace as something that 'greatly increases consumer choice by giving buyers access'" to sellers without physical or online stores. ECF No. 62 at 24. "Implicit in this statement," Plaintiffs argue, is Amazon's admission that but for its provision of an online marketplace, Kim Carpenter might not otherwise have been aware of or purchased the hoverboard. *Id.* But Plaintiffs point to no evidence that Amazon "played a dominant role in creating the market" for hoverboards, took steps to assist hoverboard manufacturers in marketing hoverboards, or engaged in any other activities that led to the creation of the initial hoverboard market. *See Bay Summit*, 51 Cal. App. 4th at 776; *see also Tauber-Arons Auctioneers Co. v. Superior Court*, 101 Cal. App. 3d 268, 277 (1980) (surveying the case law on marketing enterprise liability and concluding that the doctrine applies only to an "enterprise by which initial

distribution of the particular manufacturer's products to the consuming public is effected"). As Plaintiffs acknowledge, Amazon was not the only seller of hoverboards in the United States at the relevant time. *See* ECF No. 62 at 14-15 ("[P]rior to sending the e-mail to its customers, Amazon learned that Overstock.com had announced that it was ceasing all hoverboard sales."). Plaintiffs provide no evidence that but for Amazon's conduct, the initial consumer market for Paradise 00's hoverboards would not have existed.

Amazon has satisfied its initial burden of showing that Plaintiffs do not have enough evidence that Amazon was integral to the hoverboard business, such that its conduct was a necessary factor in bringing the defective product to market, to carry their ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102; ECF No. 54 at 24-25. Plaintiffs have not, in response, produced admissible evidence to show there exists a genuine issue of fact as to Amazon's role in bringing the hoverboard to the initial consumer market writ large. Instead, Plaintiffs merely speculate about whether Kim Carpenter in particular would have known about Paradise 00 or its hoverboards absent Amazon's involvement. *See* ECF No. 62 at 24. Because Plaintiffs have failed to demonstrate a triable issue of fact as to a necessary element of their marketing enterprise theory, and provide no other basis for subjecting Amazon to strict liability, Amazon is entitled to summary judgment on all of Plaintiffs' strict liability claims.

### C. Negligence

Plaintiffs allege in their complaint that Amazon "owed a duty of ordinary care" to consumers of the subject hoverboard, including Plaintiffs. Compl. ¶ 86. In their Opposition, Plaintiffs do not separately address their negligence claim against Amazon or identify the source of this alleged duty. Instead, Plaintiffs assert generally that Amazon's role as a marketplace provider does not preclude it from negligence liability under California law. ECF No. 62 at 21. Plaintiffs go on to discuss "liability" generally with reference to the elements of the marketing enterprise test. *Id.* at 21-23. But as Amazon points out, Plaintiffs do not explain how the marketing enterprise theory applies to negligence claims, or if it applies at all. ECF No. 66 at 11. Finally, even if the marketing enterprise theory did extend to negligence, Plaintiffs' assertion of that theory of liability fails for the reasons stated above.

The elements of negligence under California law are: "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury." *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 834 (1992). Whether a defendant owes a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989). "A duty in tort owing from a defendant to a plaintiff can be created by law, by a defendant's assumption of that duty, or by a preexisting relationship between the plaintiff and the defendant." *Jacobsen v. Marin Gen. Hosp.*, 192 F.3d 881, 885 (1999).

Defendants correctly argue that summary judgment is proper on Plaintiffs' negligence claim because Plaintiffs' have failed to assert any legal source of duty and as such, there is no genuine issue of fact as to negligence. Plaintiffs allege merely that Amazon "owed a duty of ordinary care" to hoverboard purchasers like Plaintiffs. Compl. ¶ 86. But apart from this conclusory allegation, Plaintiffs offer no evidence of any legal duty on the part of Amazon to protect consumers from defective products. Plaintiffs instead attempt, without legal support, to base their negligence claim on the marketing enterprise theory. Accordingly, Plaintiffs have not satisfied their burden of showing a triable issue of fact as to an essential element of their negligence claim, and Amazon is entitled to summary judgment on this claim.

## CONCLUSION

Because Amazon has satisfied its initial burden of production, and Plaintiffs have in turn failed to raise a triable issue of fact on at least one essential element of each of their remaining claims, Amazon's motion for summary judgment is granted.

**IT IS SO ORDERED.**

Dated: March 19, 2019

_____
JON S. TIGAR
United States District Judge